HINDMAN *v.* FRIEDRICH.

APPEAL AND ERROR — TRIAL BY COURT — FINDINGS OF FACT AND LAW—QUESTIONS REVIEWABLE.

> Findings of fact made by the trial court, without a jury, upon contradictory evidence, are not reviewable in the Supreme Court; it is only where there is a total want of evidence or where the finding is contrary to the undisputed evidence that the findings of fact will be reviewed.

---

[1] Not officially reported. Motion for rehearing pending.

Error to Kent; McDonald, J. Submitted October 26, 1910. (Docket No. 117.) Decided December 22, 1910.

Assumpsit by Ambrose C. Hindman against Otto Friedrich for rent due. From a judgment for defendant, plaintiff appealed to the circuit court. A judgment for plaintiff, on a trial by the court without a jury, is reviewed by defendant on writ of error. Affirmed.

*Adsit & Danhof*, for appellant.

*A. C. Hindman, in pro. per.*

MOORE, J.. This case was commenced in justice's court to recover rent which plaintiff claimed was due him. An appeal was taken to the circuit court, where it was tried before the judge, who made findings of fact and of law.

### "Fact.

"(1) In December, 1907, defendant rented from plaintiff certain premises in Grand Rapids for residence purposes at eighteen dollars per month, payable monthly in advance, for no specified term. Defendant moved into the premises December 15, 1907, and vacated June 15, 1908.

"(2) About March, 1908, defendant complained that the property was not worth the rent agreed upon, and it was then reduced to fifteen dollars per month.

"(3) There was no agreement between the parties that the landlord should make repairs.

"(4) Defendant paid all the rent due each month, up to June 1, 1908, but paid no rent after that time.

"(5) June 10, 1908, plaintiff received the following letter from defendant: 'Enclosed please find check for $7.50, for rent from June 1st to 15th. I'll vacate your house on the 15th inst.' On June 1st, $15 was due in advance for the month of June. Plaintiff returned the check stating that it was not enough. Defendant vacated the premises June 15th, and again sent the same check and also the keys. Plaintiff kept the keys, but again returned the check.

"(6) Plaintiff was not able to rent the house and it

stood vacant until September, 1908, when it was rented to and occupied by the present tenant in the same condition in which defendant left it.

"(7) When defendant moved in, the premises were in a tenantable condition and reasonably fit for the purposes for which they were rented.

"(8) About the middle of January, defendant noticed steam and water coming from the ground in the back yard, from the sewer. This he reported to plaintiff, who promised to have the cesspool cleaned out. No solid substances came to the surface, just liquids and some toilet paper, and both parties then supposed that this trouble was caused by the backing up from the cesspool into the sewer and coming up in this way, through the hand-hole vent or running trap. This steam and water seemed to come up at about the location of this trap in the yard.

"(9) This caused some odor that came into the house when the dining room windows were open and the wind happened to be from that direction. There was no difficulty in using the water and sewerage system in the house, and no odors came back into the house through the plumbing or sewerage system.

"(10) About May 20th, defendant's wife called the health department, and had an inspector look into the matter, and this inspector served notice on plaintiff to have foul cesspool cleaned. Plaintiff immediately upon receiving such notice gave an order to the inspector for the health department to clean the cesspool. Such work is a part of the health department's duties. Plaintiff reported to defendant that he had given the order, and also told defendant to look after it, and see that the said health department did the work promptly. The city did not clean the cesspool until after the defendant moved out and the present tenant moved in, because the city was then having litigation, and injunction proceedings were then pending about the place for the disposal of night soil and the city was not doing any vault or cesspool cleaning for a time. This work was not permitted to be done by any other than the licensed scavengers, through orders given directly to the board of health for the work.

"(11) This sewer trouble continued the same after the cesspool was cleaned and up to June, 1909, a year after defendant moved out, when the present tenant got a plumber to dig up the sewer in the yard at the place of

the show of the coming up of the water and at this vent or house trap, and he then found that the difficulty was a broken joint of sewer tile next to the trap, and a partial stoppage from the sticks and stone, etc., in the trap. This plumber cleaned out the trap and replaced the broken tile which fully repaired the trouble.

"(12) At the various times this matter was talked about between the parties before defendant vacated, neither party knew that the trouble originated from a broken sewer tile and a partially clogged trap. At the time defendant vacated the premises, neither party was aware that the trouble originated in this way.

"(13) The house did not become untenantable or unfit for habitation because of this trouble or defect. The house was tenantable and fit for habitation during all of the time occupied by defendant and was so at the time he vacated.

"(14) The defects in the sewer did not exist at the time defendant moved into the premises.

"(15) Defendant did not vacate said premises because they were untenantable, but primarily because plaintiff refused to furnish screens.

"(16) When this cause came on for trial in justice's court, defendant paid into court as a tender $7.50, but did not pay or tender any amount of costs. Plaintiff had at that time paid the costs in justice's court, $2.50. This tender was not sufficient. Even under defendant's admitted liability it should have been $10 and interest on $7.50. It is also not sufficient, because the court finds plaintiff entitled to the full amount claimed, $20 and costs.

"Law.

"(1) Plaintiff was under no obligations to make repairs.

"(2) Plaintiff is entitled to judgment for $20 damages for one and a third months, at $15 per month, this is one-third of the month, up to the receipt of the letter notifying him that the premises would be vacated on June 15th, and for thirty days after said notice."

The errors complained of are stated by counsel as follows:

"That the testimony in the case does not support the findings of the court in the following particulars:   In finding that 'on June 1st, $15 was due in advance for month of June;' that 'when defendant moved in, the premises were in a tenantable condition and reasonably fit for the

purposes for which they were rented;' that 'no solid substances came to the surface, just liquids and some toilet paper, and both parties then supposed that this trouble was caused by the backing up from the cesspool into the sewer and coming up in this way, through the handhole vent, or running trap;' that 'at the time defendant vacated the premises, neither party was aware that the trouble originated in this way,' meaning from a broken sewer tile and a partially clogged trap; that 'the house did not become untenantable or unfit for habitation because of this trouble or defect;' that 'the house was tenantable and fit for habitation during all of the time occupied by defendant, and was so at the time he vacated;' that 'the defects in the sewer did not exist at the time defendant moved into the premises;' that 'defendant did not vacate said premises because they were untenantable, but primarily because plaintiff refused to furnish screens;' that 'the tender made by defendant of $7.50 into justice's court was not sufficient;' that 'plaintiff was under no obligation to make repairs;' that 'plaintiff is entitled to a judgment of $20.'"

The testimony offered upon the part of the plaintiff in most essentials differs widely from that offered on the part of defendant.

In the case of *Cragin* v. *Gardner*, 64 Mich. 399 (31 N. W. 206), it was said:

"It is well settled that we cannot, in reviewing a case-made, weigh evidence, determine facts, or review the findings of the court below upon questions of fact. *Heimbach* v. *Weinberg*, 18 Mich. 48; *In re Wisner's Estate*, 20 Mich. 128; *Schmidt* v. *Miller*, 22 Mich. 278; *Walrath* v. *Campbell*, 28 Mich. 123; *Earle* v. *Insurance Co.*, 29 Mich. 414; *City of Grand Rapids* v. *Whittlesey*, 32 Mich. 192; *Peabody* v. *McAvoy*, 23 Mich. 526; *Tuxbury* v. *French*, 39 Mich. 190; *Chatterton* v. *Parrott*, 46 Mich. 432 (9 N. W. 482); *Wertin* v. *Crocker*, 47 Mich. 642 (6 N. W. 683). It is only where there is a total want of evidence, or where the finding is contrary to the undisputed evidence, that we can overturn the facts found by the court. In this case there was testimony to support each fact found by the circuit judge, and the facts so found support the judgment rendered by him."

In *Lamoreaux* v. *Creveling*, 103 Mich. 501 (61 N. W.

783), Justice MONTGOMERY, speaking for the court, said:

"There being testimony in the case tending to support these findings of fact, we are not authorized to go into the testimony, to ascertain whether we would reach the same result upon the facts; and, as the finding is conclusive of the plaintiff's rights, it is unnecessary to discuss the other questions involved."

These cases we think are controlling of the one before us.

Judgment is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.