### NELSON v. STEWART.

1. TRIAL—ARGUMENT—APPEAL AND ERROR—JURY.
   In an action tried by the court without a jury, appellant, who neglected to avail himself of his right to present points of law to the court to be found, could not in the Supreme Court complain of the refusal of the trial judge to hear argument after the proofs had been closed.

2. SAME—EVIDENCE—COMPROMISE.
   The objection that evidence of a compromise made between the parties was incompetent under the pleadings, could not be raised for the first time on error.

3. SAME.
   A finding of the circuit court made on the testimony of one of the defendants tending to establish a contention of plaintiff, that the other defendant knew of and assented to a certain compromise agreement, was sufficiently supported.

4. COMPROMISE AND SETTLEMENT—CONTRACTS—CONSIDERATION.
   A contract of settlement between a client and his attorney whom he charged with having taken undue advantage of him and with procuring an unconscionable agreement as to fees, etc., abrogated the prior contract providing for unreasonable compensation, and was supported by sufficient consideration.

5. SAME—INTEREST.
   Defendants should not be charged interest prior to the date of
   settlement on sums in their hands, to be repaid to the client
   pursuant to the compromise; interest should run only from
   the date of the settlement.

Error to Muskegon; Sullivan, J. Submitted November
18, 1912. (Docket No. 89.) Decided March 20, 1913.

Assumpsit by Adolph Nelson against Eugene Stewart
and John L. Bolen for money had and received. Judg-
ment for plaintiff. Defendant Stewart brings error.
Reduced and affirmed.

*William Carpenter,* for appellant.

*Alex. Sutherland,* for appellee.

KUHN, J. This case was tried by the court without a
jury. After hearing the testimony offered, and amend-
ments to the proposed findings of facts and conclusions of
law having been submitted to the court, the circuit judge
made the following findings, which give a history of the
transactions which resulted in this litigation:

" (1) That prior to January 25, 1908, the estate of John
Nelson was pending in the probate court of the county of
Cook and State of Illinois, and that the plaintiff claimed
to be the son and sole heir at law of said John Nelson,
deceased, and was so described in the petition for letters
of administration filed in said court, and signed and
sworn to by Sophie Erickson, administratrix of said es-
tate.

" (2) That a question arose as to a former marriage of
John Nelson, deceased, and the claim was raised that
Adolph Nelson was an illegitimate child, and therefore
not entitled to any share in the estate of said John Nel-
son, deceased; that the plaintiff had some talk with the
firm of Bolen & Stewart, lawyers, who are the defend-
ants in this cause, for the purpose of employing them to
protect his interest in said estate.

" (3) That on the 25th day of January, A. D. 1908, an
agreement was made between said Adolph Nelson, plain-

tiff, and John L. Bolen and Eugene Stewart, which was in the words and figures following, to wit:

" 'This memorandum of agreement, made and entered into this 25th day of January, A. D. 1908, by and between Adolph Nelson, party of the first part, and John L. Bolen and Eugene Stewart, co-partners as Bolen & Stewart, parties of the second part, witnesseth: That whereas the said Adolph Nelson is the sole heir at law of John Nelson, who died in the city of Chicago, State of Illinois, about September, 1906, and whose estate is in the process of administration in the probate court of Cook county, Illinois, the administratrix of said estate being Sophie N. Erickson, the sister of said deceased; and whereas certain proceedings have been had in the probate court in the matter of the estate of said Adolph Nelson, a minor, who is now of the age of twenty-one years and over, having become of legal age on August 25, 1907; and whereas the said Adolph Nelson as such sole heir at law of John Nelson, deceased, is the owner in fee simple of the following described real estate, situated in the county of Cook and State of Illinois, to wit, lot four (4) in block three (3) in James Couch's subdivision of the north half of the south half of the northwest quarter of section thirteen (13), township thirty-nine (39) north, range thirteen (13) east, of the third principal meridian, also lot sixty-four (64) in Edson Keith's resubdivision of lots one (1) to twenty-four (24) in block three (3) and all of block four (4) in Reed's subdivision of the east three-quarters of the south quarter of the northeast quarter of section thirteen (13), township thirty-nine (39) north, range thirteen (13) east of the third principal meridian, and is also the sole and exclusive owner and entitled to a large sum of money, to wit, twenty-five thousand dollars ($25,000.00), which is supposed to be on deposit in the Prairie State Bank of Chicago, Illinois, in the name of said Sophie N. Erickson, administratrix, and is also the owner of and entitled to a certain principal note for two thousand dollars ($2,000.00) and interest notes accompanying the same, together with the trust deed securing said note, all executed by Thomas and Bolette E. Peterson, secured upon certain real estate in Cook county, Illinois, all of the foregoing real and personal property and money being part of the property left by said John Nelson at the time of his death; and whereas questions have been raised by persons claiming to be entitled to raise such questions, that the said Adolph Nelson is not entitled to any distributive share, or any share or part of the property left by his father, John Nelson, and have claimed that the said John Nelson, having been married twice and no divorce having been affirmatively shown from the first wife, that the said Adolph Nelson is not a legitimate son of the said John Nel-

son, and therefore not entitled to inherit from him; and whereas the said Adolph Nelson is desirous of asserting his rights in and to said property, money, assets and estate, and having no means of engaging counsel to do so and being desirous of employing the parties of the second part as his attorneys and counselors to conduct such litigation, and to take such steps and measures in the premises as to them may seem best or proper, and being desirous of having his said attorneys represent him in said estate or any other proceeding which may be instituted or pending at any time hereafter, and whereas it has been agreed between the party of the first part and the parties of the second part hereto that the parties of the second part shall act as the attorneys and counsel for the party of the first part in such litigation, estates, proceedings, and in all matters pertaining to said property, money, assets and estate, and the interests of the party of the first part therein, and thereto, and that the parties of the second part shall receive therefor one-half or fifty per cent. (50%) of said property, money, assets and estate, and of the proceeds and avails thereof, or so much thereof as may be recovered or obtained, which said party of the first part is now entitled to or interested in or which he may acquire, become entitled to or become interested in: Now, therefore, for and in consideration of the sum of one dollar in hand paid by the parties of the second part to the party of the first part, the receipt whereof is hereby acknowledged, and in further consideration of the services heretofore rendered and to be rendered by the parties of the second part in said matters, the party of the first part, for himself, his heirs, executors, administrators and assigns, does hereby assign, grant, bargain, sell and convey to the party of the second part, their heirs, executors, administrators and assigns, an undivided one-half or fifty per cent. (50%) of the following property, money, assets and estate, to wit: Lot four (4) in block three (3) of James Couch's subdivision of the north half of the south half of the northwest quarter of section thirteen (13), township thirty-nine (39) north, range thirteen (13) east, of the third principal meridian; also lot sixty-four (64) in Edson Keith's resubdivision of lots one (1) to twenty-four (24), inclusive, in block three (3) and all of block four (4) in Reed's subdivision of the east three-quarters of the south quarter of the northwest quarter of section thirteen (13), township thirty-nine (39) north, range thirteen (13) east of the third principal meridian, all in Cook county, Illinois; and the certain sum of twenty-five thousand dollars ($25,000.00) aforesaid, and the certain principal note for two thousand dollars ($2,000.00) and interest notes accompanying the same, together with the trust deed securing said notes executed by Thomas and Bolette E. Peterson, aforesaid, and any and all interest in said estate

of John Nelson, and all the assets therein referred to. It is further agreed that in the event the parties of the second part shall incur or become liable for any costs, expenses or charges, that the same shall be reimbursed and paid to said parties of the second part out of any property, money or assets which may be recovered or obtained hereunder. In the event that nothing is received through said estate by the said Adolph Nelson, then it is understood and agreed that the parties of the second part are to receive nothing for their services. In testimony whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

" ADOLPH NELSON. [Seal.]

" JOHN L. BOLEN. [Seal.]

" EUGENE STEWART. [Seal.]

"'STATE OF ILLINOIS, ⎫ ss. :
" ' COUNTY OF COOK, ⎭

" ' I, Alma C. Larson, a notary public in and for and residing in the said county in the State aforesaid, do hereby certify that Adolph Nelson, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act for the uses and purposes therein set forth.

" ' Given under my hand and notarial seal this 25th day of January, A. D. 1908.

" ' ALMA C. LARSON, Notary Public. [Seal.]'

" (4) That before making this agreement the defendants had made some investigations as to the law and as to the amount of said estate, and whether or not there was liable to be a contest to determine if said Adolph Nelson, the plaintiff, was the legal heir of said estate, and had talked with the attorney for the administratrix and for said estate, and defendants came to the conclusion that there was not likely to be a contest as to plaintiff's rights as heir.

" (5) That it was represented by said defendants to the said Adolph Nelson that there would be a contest over the question of his heirship to his father's estate; that the said Adolph Nelson informed the defendants that he had no means with which to employ lawyers. There were some further negotiations between plaintiff and defendants, the whole resulting in the contract between these parties, dated January 25, 1908.

" (6) That there was in fact no contest and not very much work done on the part of defendants to establish the rights of plaintiff and to collect said estate for him;

that the heirship of plaintiff was established as a matter of course, and the proceeds of the estate of John Nelson, deceased, which plaintiff inherited, were awarded to him on February 20, 1908; that plaintiff first talked to defendants about January, 1908.

" (7) That prior to the awarding of said estate to plaintiff he had turned over to defendants, as security for their services, real estate valued at four thousand dollars ($4,-000.00), and shortly after the settlement of the estate in the probate court he left in their custody a note for two thousand dollars ($2,000.00) and interest, secured by a trust deed executed by Thomas and Bolette E. Peterson.

" (8) That at about the time of the settlement of said estate, February 20, 1908, defendants represented to plaintiff that all contest over the question of heirship would be withdrawn, provided plaintiff would turn over to Sophie Erickson, the administratrix, and who also was the supposed contestant, the Peterson note for two thousand dollars ($2,000.00) and the real estate of the value of four thousand dollars ($4,000.00) then held by defendants as security for their fees, which plaintiff consented to; that at or about the same time defendants, in part settlement between them and plaintiff, gave plaintiff eight thousand dollars ($8,000.00) in a certified check and retained seven thousand dollars ($7,000.00) to pay them for their services; and that about that time plaintiff assigned the Peterson note to defendants, defendants at such time having the title to said real estate.

" (9) After the settlement of said estate and at the solicitation of defendants, plaintiff turned over to them the certified check for eight thousand dollars ($8,000.00), being a part of his share of said estate, and received stock in the Northwestern Mortgage & Trust Company of the face value of seven thousand dollars ($7,000.00) and one thousand dollars ($1,000.00) in cash.

" (10) That during the month of April, 1908, plaintiff ascertained that the said Sophie Erickson had not received said real estate nor the Peterson note, and that she had not and never did intend to make any claim against the estate of John Nelson, as heir at law, and thereupon plaintiff went to defendants and demanded that they turn over to him the real estate valued at four thousand dollars ($4,000.00) and the Peterson note of two thousand dollars ($2,000.00). This the defendants did. Plaintiff also employed J. M. Kuh, an attorney, and through said

attorney made a demand on the defendants to pay him back the money they received from him for the stock in the Northwestern Mortgage & Trust Company; said plaintiff claiming said stock was of no value. Plaintiff also claimed that the said defendants overreached him and took advantage of his inexperience, ignorance, and youth in making the contract of January 25, 1908, between plaintiff and defendants, and for that reason said contract was unconscionable and void.

"(11) That the said J. M. Kuh, on behalf of the plaintiff, threatened the said defendants with proceedings in court to set aside said contract of January 25, 1908, upon the grounds that defendants had overreached plaintiff, and to compel defendants to pay back to the plaintiff all sums retained by them, except a reasonable fee for their services, and to repay plaintiff the seven thousand dollars ($7,000.00) paid for the stock in the Northwestern Mortgage & Trust Company.

"(12) The defendants entered into negotiations with plaintiff, and as a result of those negotiations defendants accepted the sum of eleven hundred and fifty dollars ($1,-150.00) in full payment for their services, and agreed to repay him the seven thousand dollars ($7,000.00) received by them for the stock in the Northwestern Mortgage & Trust Company and the balance of the cash that they had retained over and above the sum of eleven hundred and fifty dollars ($1,150.00), and in consideration thereof plaintiff forebore instituting legal proceedings.

"(13) Thereupon and from time to time between the 18th day of July, 1908, and the 24th of July, 1909, the defendants, in part performance of the aforesaid agreement, paid to J. M. Kuh, attorney for plaintiff, sixty-eight hundred dollars ($6,800.00).

"(14) That on the 24th day of July, 1909, the defendants dissolved partnership by a written agreement, wherein it was agreed, among other things, that there was an indebtedness owing by the firm of Bolen & Stewart to Adolph Nelson in the sum of about seven thousand dollars ($7,000.00); and that as part of the partnership agreement between said John L. Bolen and Eugene Stewart the said John L. Bolen was to pay said indebtedness.

"(15) That from the said 24th day of July, 1909, until the 21st day of February, 1911, the said John L. Bolen, on behalf of the firm of Bolen & Stewart, in continuance of the performance of said agreement, paid to O. G.

Knecht, attorney for plaintiff, eleven hundred dollars ($1,100.00) and turned over to plaintiff an equity in a piece of real estate at an agreed value of seventeen hundred and two dollars ($1,702.00).

"(16) That the title to the real estate conveyed to Nelson at the valuation of seventeen hundred and two dollars ($1,702.00) was held for the defendants by W. J. Young, and the deed was made at the request of Bolen, who asked Stewart to get a conveyance of the same made to him, and the defendant Stewart secured the conveyance and gave the deed to Bolen.

"(17) That plaintiff tendered defendants, in open court, the certificates of stock in the Northwestern Mortgage & Trust Company for the face value of seven thousand dollars (7,000.00), duly assigned in blank, and said tender was thereupon accepted by John L. Bolen.

"(18) That there is now due the said plaintiff from the defendants forty hundred ninety-three and $\frac{16}{100}$ dollars ($4,093.16); and that the interest thereon at five per cent. (5%) to date amounts to the sum of fourteen hundred twenty-four and $\frac{68}{100}$ dollars ($1,424.68).

"(19) That the plaintiff is a young man of little experience and less than the average ability and that the defendants are astute lawyers, and plaintiff was not fairly dealt with by them in their first agreement.

"(20) That this suit was commenced by attaching the interest of the defendants in certain real estate in the county of Muskegon; the said defendants being nonresidents of the State of Michigan for more than three months prior to the commencement of said suit. Defendants afterwards appeared in person in said court."

Upon these facts the court reached the following conclusions of law:

"(a) That the sale of the stock in the Northwestern Mortgage & Trust Company by defendants to the plaintiff for seven thousand dollars ($7,000.00) was a legal fraud upon the plaintiff.

"(b) That in making the contract of January 25, 1908, defendants took advantage of the youth, inexperience, and simple-mindedness of plaintiff and overreached and defrauded him; and that said contract was unconscionable, null and void.

"(c) That the contract made by plaintiff with defendants to pay them eleven hundred and fifty dollars ($1,-

150.00) in full settlement for their claim of services, and the defendants to repay plaintiff the balance of cash retained by them and the seven thousand dollars ($7,000.00) received by them for the stock in the Northwestern Mortgage & Trust Company, was a valid and subsisting contract and based upon an adequate consideration.

"(*d*) That the plaintiff should recover a judgment against the defendants in the sum of five thousand five hundred seventeen and $\frac{84}{100}$ dollars ($5,517.84), together with costs to be taxed."

Counsel for appellant request a reversal of this case upon 56 assignments of error, many of which arise from rulings of the court on the admission of testimony. We have examined them all, and shall discuss such as we consider of sufficient importance to merit it.

Complaint is made of the action of the trial judge in refusing to listen to argument of counsel at the close of the hearing, and it is insisted that no opportunity was afforded him to present to the court his views with reference to the legal questions involved in the case. Circuit Court Rule 26*a* provides:

"When cases are tried by the court without a jury, either party may, if he sees fit, at any time before judgment, present such points of law as may be deemed material, in the same manner in which such points are presented upon requests to charge in jury trials, and the court in its findings shall pass specially on all such points, as in charging a jury, as near as may be. Whenever such points are presented, and also whenever the court is requested in writing before judgment, the facts as well as the law, shall be embodied in the finding."

This gave appellant an opportunity to raise any questions of law he might consider involved in the trial, and the court was obliged to pass upon them. This rule amply safeguarded the rights of the defendant, and he cannot now complain if he failed to resort to the means provided.

When it became apparent to the defendants that they were going to have trouble with the plaintiff, and after having been harassed by an attorney representing him, it

appears that on or about July 8, 1908, they agreed to accept $1,150 in full payment of their services rendered in the matter, and to return to plaintiff all other moneys and properties received by them, and did from that time begin to make payments in accordance with said agreement. It is now urged by defendant Stewart that the evidence with reference to this agreement is inadmissible under the pleadings; that it was without consideration; and that it was made by Bolen alone, against his protest, of which fact plaintiff had knowledge. When the evidence bearing upon this transaction was offered, no objection was made that it was not proper under the pleadings. If such objection had been made, an amendment might have been allowed. Having failed to state this ground of the objection to the trial court, it cannot be urged here.

Although Stewart testified that Bolen, in making the agreement, acted without any authority from him, and insisted that he was entitled to what the original contract with Nelson provided they should have, Bolen testified as follows:

"*A.* Well, it was agreed that we should have $1,150 credit for fees, and that the balance should be paid in cash by Bolen & Stewart to Mr. Nelson. Now, these negotiations lasted for some time. I imagine it was probably somewhere the 10th or 15th of May when Mr. Kuh first came into the matter, and the first payment that was made was July 18th, I think, 1908. I had lots of conversations with Mr. Eugene Stewart relative to the settlement of the matter. I told Mr. Stewart the same day that I first saw Kuh that his disposition was that he would not permit us more than $1,000 on that case. That was as high as he would go. Then I had, perhaps, one or two other talks with Kuh, and I was not able to do any better with him. And then Mr. Stewart had a talk with Kuh, and I think—in fact, I know—that Mr. Wilson went to see Mr. Kuh in our behalf; and it was after Mr. Wilson had seen Kuh that he agreed to increase the allowance to $1,150. After that I saw Kuh myself, and Kuh told me that they would allow us $1,150 for fees in the matter, and this I reported to Mr. Stewart, and after a good deal of negotiations he told me to go ahead and close it up on that basis. The last

conversation occurred just a day or two prior to the time the first payment was made. I made payments on that; the firm of Bolen & Stewart made payments. My recollection is the first payment was July 18, 1909. It was $2,000. It was paid by cashier's check on the American Trust & Savings Bank. I haven't the check. A receipt was given for it. The receipt was given to Bolen & Stewart, as all the receipts were. This is the receipt."

While there is conflict in the testimony, we think that the trial judge was fully justified in accepting the testimony of Bolen as against that of Stewart. Moreover, findings of fact of the judge should not be overturned if there is evidence to support them. *Cragin* v. *Gardner*, 64 Mich. 399 (31 N. W. 206); *Lamoreaux* v. *Creveling*, 103 Mich. 501 (61 N. W. 783); *Hindman* v. *Friedrich*, 163 Mich. 655 (128 N. W. 1086); *Holcomb* v. *Sayers*, 173 Mich. 238 (138 N. W. 1043); *Darling Milling Co.* v. *Chapman*, 131 Mich. 684 (92 N. W. 352).

There is no merit in the contention that the agreement was without sufficient consideration. The consideration was the services rendered by Bolen & Stewart. It was agreed that the original contract should be set aside and be of no effect, and in lieu of the provision contained therein for services they were to accept the sum of $1,150.

Considerable discussion is had concerning the findings of the court with reference to the contract of January 25, 1908, and with the action of the court in holding it void.

It is urged that the plaintiff should have proceeded in a court of equity to have the rights of the parties determined. It appears from the testimony, and the court so found, that the parties made the new agreement already referred to and agreed to waive their rights under this contract, so that, so far as their rights thereunder were concerned, it was of no force and effect.

In determining the amount due the plaintiff, a computation of interest made by the witness Knecht was received in evidence. From this computation it appears that the court allowed interest on $13,820.16 at 5 per cent. from February 20, 1908, to July 18, 1908, when the first pay-

ment of $2,000 was made by the defendants to Mr. Kuh, the attorney for plaintiff, which interest amounted to $284.09, and interest was also computed on this amount. We think the defendants should not be compelled to pay interest on any sums in their possession previous to the agreement made on or about the time this payment of $2,-000 was made; and that it was improper for the judge to include it in the amount he found to be due.

The judgment will be reversed and a new trial ordered, unless the plaintiff, within 20 days, remits this amount and the interest thereon included in the judgment, in which event it will be affirmed at the reduced amount.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.