IN RE ESTATE OF ROBERT E. MOORE.

BIANCY K. TUTTLE, ADMINISTRATRIX, APPELLANT, V. JOHN L. TEETERS, ADMINISTRATOR DE BONIS NON, ET AL., APPELLEES.

FILED JUNE 4, 1929. No. 26583.

*C. J. Campbell* and *Don D. Elliott*, for appellant.

*C. Petrus Peterson, Charles R. Wilke, R. A. Boehmer* and *Sanden, Anderson, Laughlin & Gradwohl, contra.*

Heard before GOSS, C. J., GOOD, DEAN, THOMPSON and EBERLY, JJ., and LIGHTNER and REDICK, District Judges.

THOMPSON, J.

Appellant seeks reversal of a judgment disallowing a claim of Samuel J. Tuttle for attorney fees against the estate of Robert E. Moore, deceased. The latter died tes-

tate on the 6th day of December, 1921, a resident of Lancaster county, possessed of an estate of the value of from $2,500,000 to $2,800,000, about $500,000 thereof being real estate and the remainder largely consisting of what is known as "gilt-edge" bonds and securities. To the will, and forming a part thereof, there were four codicils, which, when considered in connection with the will and all as one instrument, rendered it somewhat difficult of construction. The entire estate was disposed of thereby in part to his wife, certain of his relatives and friends, by specific bequests, and the residue thereof to the Lincoln Hospital Association, one of the appellees herein. The properties comprising this estate were the fruits of long years of toil and business acumen, as well as close application on the part of the testator, and consisted mostly of loans and investments. At an early stage in the accumulation of this fortune, and as an aid, he had called to his assistance his brother, John Moore, an attorney at law, and a man of tastes similar to that of his employer brother. Recognizing these qualities, and the fitness of his brother John for the place, he was designated in the will as the one who should administer this important · trust as executor. On the death of the testator, such named executor employed Samuel J. Tuttle, hereinafter called Tuttle or claimant, one of the leading members of the bar of this state, to aid him in the administration. These parties, not being able to agree upon the fee to be charged for such attorney's services, concluded that the reasonable value thereof should be left to the determination of the court. The will with the four annexed codicils were presented to the county court for probate, which, without objections, were admitted, and John Moore appointed executor, who qualified and served until this case was tried in the county court and was pending in the district court.

Upon the estate being administered, and prior to the filing of the final report by the executor, Tuttle having been theretofore paid, at different intervals, to be applied upon such services the sum of $20,000, · filed his claim for

$40,000, noting the credit of the $20,000 previously paid, and further stating therein that claimant "seasonably and in due time will submit herewith an itemized statement of the services aforesaid by him rendered," which he did. In the aforementioned final report, the above situation as to attorney fees was reflected, and by the executor submitted for the county court's determination, without assent or objection thereto, as a part of the costs of his administration of the trust imposed and as one of the items of his accounting. After consideration, it was determined by the county court that the amount which had previously been paid was a fair and reasonable compensation for all services rendered by such attorney, and the claim was disallowed. To reverse this judgment an appeal was perfected to the district court by claimant, as is usual in such cases. In the meantime claimant died, and the appellant herein was appointed administratrix of his estate and the case revived in her name as such; also the appellee John L. Teeters was appointed as administrator *de bonis non* of the estate in question (the executor having died) and filed objections to the allowance of the claim, to which a reply was interposed. After the issues were thus joined, the case was heard by the district court before three of its members sitting in banc. A vast amount of testimony was taken pro and con, also evidence introduced consisting of the records and filings of the county court which reflected the things done therein, including the name of the attorney who was in a personal way connected immediately therewith. Later, judgment was entered disallowing such claim. The representative of claimant appeals.

There are numerous alleged reasons set forth by each of the parties as to why their respective contentions should be sustained. However, our first consideration shall be given to the following question: "Is this case, as it comes to this court, for trial *de novo,* or are the findings of fact by the trial court entitled to the same force and effect as the verdict of a jury in a law action?"

In *Williams v. Miles,* 63 Neb. 859, we held: "County

courts of the state, which are by the Constitution and laws given exclusive original jurisdiction in all matters of probate settlements of estates of deceased persons, etc., have the power and authority, with respect to the subjects mentioned, to try and determine actions of an equitable character, and grant equitable relief, when proper, to the same extent as a district court regarding other subjects in the exercise of its general equitable jurisdiction." The above cited case will be found instructive as to the equitable jurisdiction of our county courts.

In *Reischick v. Rieger,* 68 Neb. 348, 353, in citing *Williams v. Miles, supra,* with approval, we held: "Within its exclusive jurisdiction, its chancery powers are plenary." And again, citing the same case with approval, in *Youngson v. Bond,* 69 Neb. 356, 358, we stated: "It is well settled that the county court has full and complete equity powers as to all matters within its exclusive jurisdiction."

In the course of the opinion in *Hazlett v. Estate of Moore,* 89 Neb. 372, 375, we said: "The law is that the estate of decedent is chargeable with the expenses of its administration. * * * In his final account an executor should ordinarily be credited with reasonable attorney fees paid by him in proceedings to probate the will. * * * The estate itself is ultimately liable for compensation for such services, and the rule is applicable to executors. It is the policy of the law to protect attorneys in their right to reasonable compensation. * * * If an attorney employed by an executor can satisfy his lien out of money in his hands, but belonging to the estate, why should not the estate answer to him directly, where no money to which a lien can attach comes into his possession? Having, at the request of executors charged with the duty of executing a will, performed services on behalf of the estate, why, in recovering his fees, should he be driven to the circuitous course of first pursuing the executor personally and afterward the estate itself? Under the Constitution and statutes the county court in the settlement of estates of deceased persons has the powers of a court of chancery."

Thus again our holdings in *Williams v. Miles, supra,* were approved and followed.

The allowance of attorney fees by the court is considered in the nature of costs, and should be thus treated. This necessarily involves an accounting and the exercise of judicial discretion, each inherent in a court of chancery. Clearly the issues here involve a trust fund, the executor being the trustee, deriving his power from the statute, and the claimant desiring to have a lien impressed thereon to the extent of the fees found due him.

The attorney fee, being an item of cost of administration, was properly carried in the executor's final report, and submitted as a part of the expense incident to the successful handling of the trust and the accounting therein prayed. In such case it is for the court to decide whether a necessity for such employment existed, and to make inquiry as to the reasonableness of the fee charged under the facts reflected by the record and evidence adduced at the hearing. In other words, the court should so determine after taking into account the qualifications and standing of the attorney, his fitness for the particular task, the intricacy or novelty of the legal questions involved, the amount in controversy, the extent and duration of his services, and the burden by him carried, including the element of responsibility to the imposed trust. In such determination the estate should be given the benefit of any doubts, if such arise from the inquiry, thus safeguarding the property of the deceased to the extent that it may pass to the persons, and be devoted to the purposes, by the testator intended, unless prevented by law or by events beyond the court's control. Such report is the statutory manner of submitting the final account of the executor for the court's consideration, and calls for the exercise of its sound discretion, so that equity and justice may prevail; thus clearly an equitable proceeding.

We entertain no doubt that this is a case exclusively within the jurisdiction of the county court, one which called for the exercise of its equitable powers, and comes to this court for trial *de novo.*

Contrary to the above view, our attention has been called to the following cases: *McIntosh v. Brown,* 159 Ia. 41; *In re Mitchell's Estate,* 178 Mich. 493; *Dearing v. Coulson,* 48 Ind. App. 414; *Starrett v. Brosseau,* 208 Ill. 408. We find, however, upon an examination thereof, that each is based on a contract entered into by the deceased in his lifetime with the claimant—clearly not analogous to the case before us.

Also we find cited by appellees *MacDonald v. Tittmann,* 96 Mo. App. 536, and *Baker v. St. Louis Union Trust Co.,* 234 S. W. (Mo. App.) 858. As to these cases it is sufficient to say that the statutory law of Missouri does not vest its probate courts with equitable jurisdiction, as stated in *Matson & May v. Pearson,* 121 Mo. App. 120, which is cited in the above named *Baker* case: "The reason for the old English rule that courts of chancery possess jurisdiction of all matters respecting administration and estates of deceased persons, does not obtain in this state because the statutory provisions are so ample with respect to such matters that they amount to an exclusion of equity jurisdiction." Yet in this case it is stated: "A court of chancery will not assume jurisdiction of a matter involving a demand against an estate of a deceased person unless the facts are such that adequate relief at law cannot be had."

Further appellees cite *McNulty's Estate,* 230 Pa. St. 387, and *Tracy v. Spitzer-Rorick Trust & Savings Bank,* 12 Fed. (2d) 755. The decision in the Pennsylvania case is not impelling in this, there being involved in that case a contest between two claimants for compensation for selling a piece of property which belonged to the estate. The executor took no part in the controversy. One party recovered, from which recovery the other appealed, and the appellate court affirmed the judgment of the trial court, and held that as the defeated claimant was without interest in the estate he was not in position to challenge the recovery of the winning party; and further, as the executor had not challenged the successful claim, he could not be heard on appeal to urge objections to the allowance thereof.

As to the *Tracy* case, it is in no manner controlling as to the proper construction of the laws of Nebraska applicable to the present action.

Applying the rules heretofore announced to the record: Tuttle's qualifications were of such impelling force as to induce the testator to employ him as his adviser, draftsman, and advocate for many years antedating, and leading up to, the former's death. Thus Tuttle knew the constituent parts of the estate, their respective values, and their needs, as did also the brother John. Between the testator, the brother, and this attorney, there was a friendly understanding as well as an abiding faith in each other's ability and integrity. They naturally became possessed of a mutual desire that these accumulated properties be judiciously conserved. The testator, being fully cognizant of these facts, logically was led to name this brother as executor, and the latter to select as his aid and counselor the attorney Tuttle.

The evidence on the part of claimant was that of eminent attorneys, given by way of a hypothetical question propounded to each, together with those possessed of personal knowledge of the time and attention Tuttle had given to the matters involved. That on the part of the objector was largely based on services that the respective witnesses (men of equal standing at the bar) claimed to know that Tuttle had rendered to the estate. These respective estimates created a variance of opinion ranging from $15,000 · to $20,000 as to what a reasonable fee would be. Further, three members of the district court heard all of the testimony that is now before us, and, so far as the consideration of the case here is concerned, must be concluded to have applied to the facts developed at the trial their individual experiences.

The consensus of opinion of claimant's witnesses is that the $20,000 paid to Tuttle lacks many thousands of dollars of being an adequate fee for the services rendered. The consensus of opinion of objector's witnesses is that the $20,000 was in excess of the fee that he should have received. The trial court found that the $20,000 paid was ample.

We have with much care observed each exhibit submitted, as well as considered all of the evidence, and this in the light of the able briefs that have been furnished on either side. As illustrative of the conclusion that we are about to reach, it might be well to suggest the following undisputed facts: The will, as well as each of the codicils connected therewith, were admitted to probate without contest; the executor was possessed of more than ordinary knowledge and equipped with unusual ability to handle the properties of the estate in every detail, aided by the advice of his attorney; the executor conducted the business after his appointment the same as it had been in the lifetime of the testator, so far as collecting and preserving the assets of the trust; that immediately on the will being admitted as above indicated, the widow (the testator having died without issue) rejected the provisions of the will and codicils, and elected to take her distributive share of the total property, as provided by statute, to wit, one-half of the entire estate; that in so doing she employed for herself an attorney, generally speaking of equal ability to that of Mr. Tuttle, and that he, without opposition on the part of Tuttle, associated himself with the latter in the further administration of the estate to the extent of looking after the interest of his client, the widow. While this action on the part of the widow's attorney would not of itself relieve Mr. Tuttle or the executor of the responsibility resting upon each thereof in the further administration of these properties, it was at least an aid to them in the performance of their respective duties. It should further be noted that, as to the federal inheritance taxes, special attorneys were employed at Washington, with the consent, if not under the direction of, Tuttle, which attorneys assumed and retained sole charge of that part of the estate's administration. The legal effect of the widow's election, and of the death of one of the legatees who died leaving heirs of his body prior to the death of the testator, were questions vital only to those possessed of a legal interest in the property or a part thereof, and entitled to share in its final distribution. This was

recognized by all of such parties in the proceedings instituted by certain heirs in the federal court, which will be found reported in *Moore v. Lincoln Hospital Ass'n,* 6 Fed. (2d) 986, in which case the executor, through Tuttle, filed simply an informatory answer and took no further part.

It might be well to also make mention of the fact that Tuttle was taken seriously ill the latter part of November, 1923, and was confined from that time until the first of February, 1924; that in the meantime the executor, at the instance of Tuttle, employed another attorney who took active charge of the legal matters involved, at all times recognizing Tuttle as his superior as to the legal burdens carried, and so continued to recognize Tuttle until the close of the trust. However, after his employment, he prepared certain papers and presented certain matters to the county court, Tuttle being frequently present at the hearings in an advisory capacity, but taking no part in the oral arguments. At the time the claim here in question was filed, September 25, 1925, this attorney lodged with the county court for allowance a claim for the services by him rendered for the sum of $17,135, to which no objections were interposed, which after hearing had was allowed in the sum of $16,000, and by the executor paid. The services liquidated by such allowance and payment were covered by the Tuttle contract of employment, and would have been by him performed but for his aforesaid sickness. It will be observed that we have not in any manner attempted, save in a very general way, to outline the services rendered by Tuttle, preferring to suggest some of the things he did not do, and not to burden this opinion with a detailed statement of the numerous things he did do; thus leaving for our determination what would be a reasonable fee for the entire burden carried and services rendered under Tuttle's contract with the executor, whether performed by him, or for him by his assistant. As such assistant was employed by the executor at the request of Tuttle, to do and perform that which Tuttle should have done, and would have been compelled to do, under such contract, there should be deducted from the

compensation found to be due to Tuttle the $16,000 allowed and paid such assistant, as Tuttle under this record cannot be heard to complain of the amount paid by the executor to such assistant. We find ourselves unable to agree with the claimant that he is entitled to an additional allowance of $20,000, or with the objector that Tuttle has been overpaid, or with the trial court that the $20,000 paid is a reasonable fee. Tuttle's contract was that he would carry the burden devolving upon him and perform all services necessary for him as such attorney to perform. With this contract he faithfully complied; to do that which he was unable to perform he supplied another equally competent. This was satisfactory to the court, the executor, and all concerned. The county court, as well as the trial court, must have been impressed with the belief that Tuttle was virtually out of the case from the time his assistant stepped in. We are strengthened in this conclusion by the testimony of the county judge then presiding, given at the trial in the district court. The evidence is clearly to the contrary. Tuttle never ceased to carry the burden, and his fee should be gaged accordingly. His efficiency and adaptability for the task imposed are unquestioned, as they well might be. Neither is there in this entire record that which would give rise to even a suspicion that the estate, and everyone connected with it, did not at all times receive the very utmost that this attorney was able to give of his attention, time, effort, and wisdom.

The evidence, considered as a whole, clearly warrants us in establishing the fair and reasonable fee due to Tuttle, under his contract with the executor, as we find, at $40,000. From this we deduct the $16,000 paid the assistant attorney, and the $20,000 heretofore paid for which credit is given on the claim filed, leaving a balance due from the estate of Robert E. Moore, deceased, to the appellant herein in the sum of $4,000, with interest thereon at 7 per cent. per annum from the date of the disallowance of the claim in the county court, together with all taxable costs in the three courts.

The judgment of the district court is reversed and the cause remanded to such court, with directions to enter judgment in conformity with this opinion, and to require such judgment to be certified to the county court.

REVERSED.

GOOD, J., dissents.

Note—See Attorney and Client, 6 C. J. 750 n. 21 to 27—Executors and Administrators, 24 C. J. 98 n. 18, 104 n. 96, 1051 n. 22; 25 L. R. A. n. s. 75, 76; 11 R. C. L. 234; 2 R. C. L. Supp. 1225.